WILSON *v.* UNION SAV. ASS'N *et al.*

*(Circuit Court, E. D. Missouri, E. D.* March 10, 1890.)

1. RAILROAD AID BONDS—DELIVERY—NON-PERFORMANCE OF CONDITIONS.
   Township bonds issued in aid of a railroad company were, with the assent of the company, deposited by the township trustee in a bank, and a receipt taken binding the bank to surrender them upon the joint order of the trustee and a contractor to whom they were to be paid for construction work. It was agreed between the trustee and the contractor that the bonds were not to be delivered to the latter till he had paid all debts for labor and supplies on the work in the township. These payments the contractor failed to make. *Held*, on a bill by his assignee to compel the delivery of the bonds, that the assignor had failed to comply with the conditions precedent on which he was to receive them, and that the assignee had no title.

2. SAME—LEGALITY OF ISSUE—CANCELLATION.
   The bonds were in excess of the amount which the township was authorized to issue, and were obtained from the state treasurer on a false certificate by the township trustee that the conditions on which they were issued had been complied with. The railway company was cognizant of the fraud, and receipted to the treasurer for the bonds, but never had actual possession of them, though it assented to their delivery to the contractor by the township trustee in payment for construction work. *Held*, that this did not constitute a negotiation of the bonds to an innocent purchaser; and, as the conditions on which they were issued had not beem complied with, the consideration had failed, and the township was entitled to a decree for their surrender and cancellation.

In Equity.

This is a controversy as to the right of possession of 22 bonds, of the denomination of $500 each, issued by Oswego township, of the state of Kansas, which, at the date of the filing of the bill, were in the actual

custody of the Union Savings Association of St. Louis, Mo. Wilson claims them as purchaser and assignee under Edward Burgess. His contention is, in brief, that the bonds were duly issued by the township of Oswego in aid of the building of the Memphis, Carthage & Northwestern Railroad, and were delivered to the railroad company about December 1, 1872; that the bonds were thereupon placed by the railroad company in the joint custody of Burgess, who was the contractor for building its road through Oswego township, and C. Montague as trustee for the railroad company, upon the understanding that they should be turned over to Burgess, in payment for work done, on the completion by him of certain work then in progress, up to the amount and value of said bonds; and that Burgess and Montague lodged them for safe-keeping in the mean time with the Union Savings Association, taking therefor its receipt, by the terms of which they could only be obtained on the joint order of the depositors. He claims that Burgess subsequently did the work, on the completion whereof his right to the bonds became absolute, but that Montague has ever since wrongfully refused to join in an order whereby the bonds could be obtained from the association. On the other hand, Oswego township denies, both in its answer and cross-bill which has been filed, that the bonds in question were ever by it delivered to the Memphis, Carthage & Northwestern Railroad Company, or that the railroad company ever delivered them to Burgess and Montague under the circumstances stated in the bill, or that they were ever deposited with the Union Savings Association in the manner and for the purpose alleged. The contention on the part of the township is that the bonds in question are part of an issue of 160 bonds that were originally executed in the name of the township without consideration, and without authority of law; that the whole issue was fraudulently delivered to one Joseph Nelson, at the time township trustee, who fraudulently procured them to be registered by the auditor of the state of Kansas, and then took them to St. Louis, Mo., and deposited the 22 bonds now in controversy with the Union Savings Association, taking therefor a receipt by which they were to be surrendered by the association on the joint order of Edward Burgess and himself as township trustee; that the agreement between Burgess and Nelson was that Burgess should have the 22 bonds so deposited when the Memphis, Carthage & Northwestern Railroad was completed through the township of Oswego and into the city of Oswego, and a depot had been there constructed, and when Burgess, and those engaged with him in the work of construction, had paid all debts contracted for labor and supplies; that the delivery of the bonds by the township to Nelson, its trustee, was on the express condition that they should not be delivered to Burgess until he had complied with the terms last mentioned; that the receipt so given by the association to the order of Burgess and Nelson, trustee, was subsequently surrendered, and a similar one executed by the association in favor of Burgess and C. Montague, trustee, when the latter had succeeded Nelson as township trustee; that the Memphis, Carthage & Northwestern Railroad was not constructed by Burgess

through Oswego township, as contemplated, when the bonds were deposited, and the receipt taken therefor, nor was a depot built, nor did Burgess ever pay the labor and supply claims by him contracted, and hence never became entitled to the bonds under the terms of his agreement with Nelson as township trustee, even if the bonds were lawfully executed. The controversy is thus seen to be between Wilson, assignee of Burgess, on the one hand, and the township of Oswego on the other. The township, by its cross-bill, prays that the bonds may be surrendered to it for cancellation. The Union Savings Association disclaims any interest in the controversy except as a mere stakeholder.

*M. & J. R. Kincaly* and *Bacon & Woodward*, for complainant.

*John O'Day* and *E. D. Kenna*, for Oswego Township.

*Hitchcock, Madill & Finkelnburg*, for Union Sav. Ass'n.

THAYER, J., (*after stating the facts as above.*) Before considering the questions of law that have been discussed by counsel, it will be necessary to settle some disputed questions of fact. There is a controversy under the pleadings as to whether the 22 bonds that form the subject-matter of contention were ever delivered by Oswego township to the Memphis, Carthage & Northwestern Railroad Company, and a further controversy as to the terms of the agreement under which the 22 bonds were originally deposited with the Union Savings Association, on December 2, 1872, and as to whether C. Montague, who succeeded Nelson as township trustee, acted as trustee or agent for the Memphis, Carthage & Northwestern Railroad Company when the second receipt for the bonds in question was executed by the Union Savings Association, on December 17, 1873. These seem to be material questions of fact, that should be disposed of *in limine;* and the court will dispose of the same by stating concisely the facts in relation to the several transactions that seem to be established by a preponderance of evidence.

After the whole number of bonds issued by Oswego township in favor of the Memphis, Carthage & Northwestern Railroad Company, to-wit, 160, had been deposited with the state treasurer of Kansas, and a receipt therefor had been signed by L. P. Cunningham as president of the Memphis, Carthage & Northwestern Railroad Company, the whole issue passed into the actual custody of Joseph Nelson, township trustee, and was by him taken to the city of St. Louis, Mo., on or about December 1, 1872. The testimony fails to show that the railroad company, though it receipted for the bonds on the books of the state treasurer, ever in fact had actual possession of any of them before they were taken to St. Louis, Mo. At the latter place, 24 bonds, Nos. 1 to 22, inclusive, and Nos. 49 and 50, were undoubtedly delivered to the president of the Memphis, Carthage & Northwestern Railroad Company, for the use of the company, with the consent of Burgess and Nelson, the township trustee. At the same time, 50 other bonds, Nos. 51 to 100, both inclusive, were undoubtedly paid to Burgess on account of construction work theretofore done for the railroad company, with the latter company's consent, and for its account. Sixty other bonds, Nos.

101 to 160, both inclusive, were deposited by Nelson, trustee, in the Union Savings Association, as a special deposit, for purposes and under conditions unnecessary to be here stated. The remaining 26 bonds, Nos. 23 to 48, both inclusive, of which the 22 bonds now in question formed a part, were also left by Nelson in the custody of the Union Savings Association, and a receipt was issued, by which the association bound itself to surrender the bonds on the joint order of Burgess and Nelson, as trustee. I am satisfied that, at the time this latter deposit was made, the November estimate of construction work done on the line of the Memphis, Carthage & Northwestern Railroad had not been received; that it was known that such estimate would show considerable construction work done in Oswego township by citizens of that township who had been employed by Burgess, or at least who claimed to have been so employed; that Burgess promised to pay such subcontractors the amount so shown to be due when the estimate was received, or shortly thereafter; and that it was agreed by and between Burgess and Nelson, and other citizens of the township who appear to have been present, (the Memphis, Carthage & Northwestern Railroad Company assenting thereto,) that, when Burgess had made the payment, the 26 bonds, including those in controversy, should then be delivered to him, and become his property. The foregoing seems to be the most satisfactory conclusion deducible from all the circumstances and evidence in the case. As the transaction occurred nearly 18 years ago, and as no written statement of the purpose for which the bonds were deposited appears to have been prepared, and as the interests of the parties are now at variance, there is, as might be expected, considerable conflicting oral testimony. The court also concludes that C. Montague did not intend or assume to act as trustee or agent of the Memphis, Carthage & Northwestern Railroad Company, when he accepted the receipt for the 22 bonds of date December 17, 1873. The fact seems to be that that receipt was a mere substitute for the previous receipt of December 2, 1872, drawn to the order of Burgess and Nelson, trustee, Montague having in the mean time succeeded Nelson as township trustee, and that such second receipt did not, and was not intended to, work any change in the conditions on which the bonds were held.

In view of the above findings, it seems obvious that complainant cannot recover the bonds on the title set forth in the bill, or on any other title disclosed by the evidence. The bonds were not, as alleged, placed in the joint custody of Burgess, and an agent or trustee of the railroad company, to be delivered to Burgess on the completion of certain construction work in an amount and value equal to the face of the bonds, which work has since been done; but they were placed by the township trustee with the savings association, under an agreement between Burgess and the trustee that the latter would surrender them to Burgess when he had made a certain payment on account of certain construction work done in the township. There is no testimony in the case, nor is it pretended, that Burgess ever made the payment which was to be a condition precedent to the delivery of the bonds. Nor did he claim

the bonds for years after they were so deposited, although it is evident that, if he or his assignee is now entitled to them, his right thereto became absolute more than 10 years before this suit was filed. It is suggested by counsel for complainant that whatever engagement the township trustee may have entered into with Burgess for the surrender of the bonds was in excess of the trustee's authority as a township officer, and hence that the contract was voidable at the election of Burgess. This may be true, but, in the opinion of the court, it is unnecessary to decide whether it is or is not a correct view of the trustee's authority. On the assumption that the contract was voidable, and that Burgess and his assignee have elected to ignore it, then complainant is utterly without right to the possession of the bonds. On the assumption that the agreement was voidable, the bonds are in the possession of the township trustee, or his bailee, the Union Savings Association, and are held precisely as they were when the township trustee received them from the hands of the state treasurer of Kansas. At that stage of the transaction, it will not be claimed that Burgess could have interposed, and replevied them from the hands of the township trustee. His right to the possession of the bonds obviously arose out of transactions that occurred in the city of St. Louis. But at the latter place the 22 bonds in controversy do not appear to have been at any time in the actual possession of the Memphis, Carthage & Northwestern Railroad Company, with whom Burgess had contracted to receive bonds in payment for work, nor does the railroad company appear to have then and there delivered the bonds to Burgess; nor does Burgess appear at that time to have given the railroad company an absolute credit as for so many bonds. On the contrary, there was a qualified arrangement entered into, which was assented to by Burgess, the township trustee, and the railroad company, to the effect that a delivery should be made on some future occasion, when Burgess had made a certain payment, which, as it now appears, he has not made. I accordingly conclude that the complainant's bill must be dismissed.

The next question to be considered is whether the township is entitled to affirmative relief on its cross-bill. It prays that the bonds may be ordered to be surrendered up for cancellation because, as it contends, they are not valid obligations against the township. That the bonds were originally issued without authority of law, on the testimony in this case, admits of no controversy. They appear to have been authorized by a vote of the citizens of the township at an election held on December 20, 1871. The total issue authorized amounted to $80,000, and the annual interest thereon to the sum of $8,000. The township had previously issued bonds to the amount of $100,000, bearing 10 per cent. interest, in aid of the Missouri, Kansas & Texas Railroad Company, which issue was outstanding and unpaid. The laws of Kansas then in force provided that the amount of bonds that might be voted by any township in aid of railway construction "should not be above such an amount as would require a levy of more than one per cent. per annum on the taxable property of such township to pay the yearly interest on

the amount of bonds issued." Chapter 90, Laws Kan. 1870, § 1. The assessed value of all property in Oswego township for the year 1871, appears to have been only $159,994. A tax of 1 per cent. thereon would accordingly realize only $1,599, wherewith to pay bonded interest to the amount of $18,000. But, even if the township had had authority to issue bonds to the amount of $80,000 to the Memphis, Carthage & Northwestern Railroad Company, the evidence shows beyond contradiction that the railroad company never fulfilled the terms of the subscription, and never became entitled to the bonds, either under the terms of the subscription, or under the laws of the state of Kansas. The bonds were not deliverable to the railroad company until it had constructed its road through the township to the city of Oswego, and had located and built a depot and side track in the city of Oswego. These conditions it never fulfilled. Nevertheless the township trustee and township clerk executed 160 bonds to the amount of $80,000, and deposited them with the state treasurer on October 25, 1872. On the 27th of November, 1872, the township trustee certified to the state treasurer that "the conditions of the subscription * , * * had been fully complied with;" and on the strength of such certificate the state treasurer surrendered the bonds into the actual possession of the township trustee, taking therefor, the receipt of the railroad company. The certificate so made by the township trustee was confessedly false and fraudulent; and the president of the railroad company, who signed the receipt for the bonds, although he did not at the time obtain actual possession of any of them, was obviously cognizant of the fraud, and an active party thereto.

Notwithstanding these facts, counsel in this case have argued at some length the question whether the bonds now in controversy might not be enforced against the township, in a suit by an innocent purchaser for value, because of certain recitals that the bonds appear to contain. This, however, appears to be an immaterial question, for the reason that no one, so far as the record discloses, can enforce payment of the 22 bonds now in controversy on the pretense that he is an innocent purchaser of the same for value. The township never delivered the particular bonds in dispute to the railroad company, and the company never had the actual possession of them. But, even if the fact that the railroad company receipted for the bonds to the state treasurer could be held to be tantamount to a delivery of them by the township to the railroad company, as complainant's counsel seems to contend, yet the evidence fails to show that the railroad company ever delivered the bonds to Burgess, or that he ever had actual possession of them, or that he released any claim against the railroad company, or parted with anything of value in consideration of such delivery. His rights against the railroad company under his contract, for aught that the testimony in this case shows, remained the same after the 22 bonds were deposited in the savings association that they were before such deposit. There is no well-established fact in the case, therefore, that will entitle Burgess to claim that he is an innocent purchaser of the bonds; and the same remark may be made with reference to complainant, who has merely succeeded to the rights of Burgess, whatever they may be.

A man who buys negotiable securities, as the complainant appears to have done, from a person who is not able to deliver them, because they are at the time in the actual possession of some third party, certainly acquires no greater right or better title than his vendor possessed.

As the 22 bonds in controversy were obviously issued without authority of law, and as they have never been negotiated in such manner as to furnish any person or corporation with a pretense for attempting to enforce them against the township as an innocent purchaser for value, a decree will be entered on the cross-bill directing their surrender to the proper officers of the township for cancellation.